[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15751
Non-Argument Calendar
_____

| | FILED |
| --- | --- |
| | U.S. COURT OF APPEALS |
| | ELEVENTH CIRCUIT |
| | JUNE 4, 2012 |
| | JOHN LEY |
| | CLERK |

D.C. Docket No. 1:09-cv-03311-RGV

ALLEN STAMPS,
individually,
REGINA STAMPS,
individually and as Next Friends of,
H.S., Incapacitated,
S.S., a minor child,
J.S., a minor child,

                                        Plaintiffs-Appellants,

versus

GWINNETT COUNTY SCHOOL DISTRICT,
GWINNETT COUNTY BOARD OF EDUCATION,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 4, 2012)

Before TJOFLAT and PRYOR, and KRAVITCH, Circuit Judges.

PER CURIAM:

Allen Stamps, his wife, Regina Stamps, and their three children, H.S., S.S., and J.S., appeal the judgment in favor of the Gwinnett County School District. The Stamps challenge, under the Individuals with Disabilities Education Improvement Act, the programs devised by the District to educate their children, who suffer from genetic and neurological disorders, in public schools instead of their home. The Stamps argue that the District Court failed to give adequate weight to the expert opinion of the children's treating physician. We affirm.

"Whether an educational program provided an adequate education under the Act "'is a mixed question of law and fact subject to <u>de novo</u> review."' <u>Draper v. Atlanta Indep. Sch. Svs.</u>. 518 F.3d 1275, 1284 (11th Cir. 2008) (quoting <u>CPv. Leon Cntv. Sch. Bd. Fla.</u>. 483 F.3d 1151, 1155 (11th Cir. 2007)). We review findings of fact for clear error, id, ever mindful that the District Court is required to "accord 'due weight' to administrative findings." <u>Loren F. Ex rel. Fisher v. Atlanta Indep. Sch. Svs.</u>. 349 F.3d 1039, 1314 (11th Cir. 2003). "To that end, administrative findings 'are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obligated to explain why.'" <u>Id.</u> at 1314 n.5 (quoting <u>MM v. Sch. Dist. Of Greenville Cntv.</u>. 303 F.3d 523, 531 (4th Cir. 2002)). "Where the district court does not receive any additional evidence or testimony, this court

2

stands 'in the same shoes as the district court in reviewing the administrative record and may, therefore accept the conclusions of the [administrative law judge] and district court that are supported by the record and reject those that are not.'" Id. at 1314 (quoting M.L. v. Fed Way Sch. Dist.. 341 F.3d 1052, 1062 (9th Cir. 2003)).

The administrative law judge did not clearly err in finding that the programs devised by the district are reasonably calculated to provide the children an adequate education in the least restrictive environment and that the children are capable of attending public school. Dr. Batlle's testimony did not establish that H.S., S.S., and J.S. had to be educated at home because they had a nonspecific immune deficiency. Batlle testified that the children's immune deficiency did not require preventative treatment, they did not have a "bonafide primary immune deficiency," their immune systems "[would] improve just like anybody" with age, and the children had not been sick in several years. Batlle's testimony was consistent with the opinion of an expert in pediatric infectious diseases who, after reviewing the children's medical records and speaking briefly with Batlle, found that the children "would have the same probability of getting sick" as other children and that, because "they did not have any severe or unusual infections," they should not have "any restrictions on their socialization activities, be it school

3

or going to community functions." Although Batlle opined that home tutoring had prevented the children from contracting illnesses, Batlle had not recommended that tutors follow any health protocols in the Stamps' home, and the record established that the public schools would provide a more sterile environment for the children. In contrast to the Stamps, who disinfected only intermittently the areas of their home and materials used for teaching, the schools regularly cleaned the children's tools and work spaces between teaching sessions. The District placed each child in a school that could accommodate his or her specific needs for hygiene and level of disability, and the Executive Director of Special Education for the District testified that, if the children became ill, they would receive "intermittent homebound instruction."

We **AFFIRM** the judgment in the favor of the District.